13-5012
======================================================

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA FEDERAL CIRCUIT

=========================

MARGARET D. NEWTON,

Plaintiff-Appellant,

v.

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Defendant-Appellee.

==========================

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

## BRIEF FOR APPELLANT

Jeffrey H. Leib
5104 34th Street, N.W.
Washington, D. C. 20008
(202) 362 - 0682
Attorney for Appellant

November 6, 2013

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Federal Rule of Appellate Procedure 28 and Circuit Rule 28, appellant states as follows:

## A. Parties

Margaret D. Newton is the Plaintiff/Appellant on appeal and in the herein brief.

The Architect of the Capitol is the Defendant/Appellee on appal and  in the herein brief

## B. Rulings Under Review

The ruling under review is the November 21, 2012 Memorandum and Order dismissing the  underlying case in its entirety, Civil Action No.: 1:11-cv-02302 (RCL).

## C. Related Cases

The instant matter is related to prior  Case No 12-5145 in the Court of Appeals which was dismissed by summary affirmance.

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................ii

TABLE OF AUTHORITIES......................................................................iv

BRIEF OF APPELLANT MARGARET D. NEWTON....................................1

I.     STATEMENT OF JURISDICTION................................................1

II    STATEMENT OF THE ISSUES...................................................2

III   STATUTES..................................................................................2

      A.  DISCRIMINATION PURSUANT TO 2 U.S.C. 1311(a)(1) OF THE CAA.................2

      B.  RETALIATION PURSUANT TO 2 U.S.C. 1317(a) OF THE CAA...........................2

      C.  DISCRIMINATION PURSUANT TO 42 U.S.C. 2000e-2, TITLE VII.......................3

      D.  RETALIATION PURSUANT TO 42 U.S.C. 2000e-3, TITLE VII...............................3

IV   UNDISPUTED STATEMENT OF FACTS........................................4

      A.  FACTUAL BACKGROUND RESPECTING APPELLANT'S PRIOR PARTICIPATION IN FEDERALLY PROTECTED ACTIVITIES......................4

      B.  GENERAL FACTUAL BACKGROUND.................................................5

V    SUMMARY OF ARGUMENT........................................................11

VI   ARGUMENT................................................................................15

      A.  STANDARD OF REVIEW..............................................................15

      B.  THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE UNIQUE PROVINCE OF THE JUDICIARY.........................................16

      C.  THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE DECISIONS OF THE DISTRICT COURTS..........................................17

      D.  THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE CAA AND TITLE VII ARE NOT *IN PARI MATERIA*...........................22

1.   THE PRINCIPLE OF *IN PARI MATERIA* AND
CONFLICTING PRINCIPLES OF STATUTORY CONSTRUCTION..........................23

2. DISCRIMINATION BASED ON SEX AND GENDER UNDER THE CAA;
AND,  GENERAL PRINCIPLES OF STATUTORY CONSTRUCTION.......................26

E.   DISCRIMINATION PURSUANT TO THE CAA AND TITLE VII.........................29

F.   RETALIATION PURSUANT TO THE CAA AND TITLE VII................................32

G.  THE EFFECT OF THE UNIFORM REMEDY FOR RETALIATION.....................37

H. HOSTILE WORK ENVIRONMENT CLAIMS UNDER THE CAA........................44

CONCLUSION..................................................................................................................49

CERTIFICATE OF COMPLIANCE.............................................................................51

CERTIFICATE OF SERVICE........................................................................................51

## TABLE OF AUTHORITIES

<u>CASE LAW</u>

*Advertiser's Mfg. Co.*, 280 N.L.R.B. 1185, 1190-91 (1986), enforced,823 F.2d 1086
(7th Cir. 1987)........................................................................................................................40

*Akins* v. *United States*, 194 Ct. Cl. 477, 439 F.2d 175, 177 (1971)..............................................43

*Andrews* v. *City of Philadelphia,* 895 F.2d 1469(3d Cir. 19909)....................................................45

*Baird* v. *Gotbaum*, 662 F.3d 1246, 1248(D.C.Cir. 2011)...............................................................33

*Bowsher* v. *Merck & Co.*, 460 U.S. 824, 103 S.C..1587(1983)...............................................14 , 21

*Branch* v. *Smith*, 538 U.S. 254(2003)......................................................................................15, 22

*Britton* v. *Office of the Architect of the Capitol,* Case No. 02-AC-20(CV, RP),
(May 23, 2005), *"Britton"* ..............................................................12, 20, 30, 32, 34, 49

*Brokaw* v. *Mercer County*, 235 F.3d 1000(7th Cir. 2000).............................................................48

*Brown* v. *City of Tucson*, 336 F.3d 1181, 1191-92 (9th Cir. 2003)................................................36

*Burns* v. *Alcala* , 420 U.S. 575, 580-581(1975)...........................................................................27

*Callanan* v. *United States*, 364 U.S. 587, 594-95(1961)..............................................................28

*Caminetti* v. *United States*, 242 U.S. 470, 485(1917)..............................................................27, 28

*Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council*, 467 U.S. 837, and note 14(1984),
*"Chevron"*...........................................................................................................................16

*Commissioner* v. *Bilder*, 369 U.S. 499, 503, 8 L. Ed. 2d 65, 82 S. Ct. 881 (1962).......................43

*Connecticut National Bank* v. *Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146,
117 L.Ed.2d 391(1992)............................................................................................................28

*Covad Communications  Co.* v. *Bell Atlantic  Corp.*, 398 F.3d 666, 670-71(D.C.Cir. 2005)......15

*Croixland Properties Ltd.* v. *Corcoran*, 174 F.3d 213, 215(D.C.Cir. 1999)..........................15, 16

*Culver* v. *Office Supply Service, Office of the Chief Administrative Officer,
United States House of Representatives*, Case No. 96-AC-55(AG, CV, FM)(April, 1998) .....30

*District of Columbia Nat'l Bank* v. *District of Columbia*, 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (D.C.Cir. 1965)................................................................28

*Duncan* v. *Office of the Architect of the Capitol*, Case No. 02-AC-59(RP) (September, 2006)....................................................................................38

*Duncan* v. *Walker*, 533 U.S. 167(2001)..............................................................38

*Dunn* v. *Commodity Futures Trading Comm'n*, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93(1997)............................................................................38

*Edgar L. Landen T/A Speed Mail Serv.*, 251 N.L.R.B. 476, 477 (1980).......................40

*F & R Meat Co.*, 296 N.L.R.B. 759, 767 (1989).................................................41

*Fanning* v. *Gregoire*, 57 U.S. 524, 528(1853)..................................................23

*Federal Express Corporation* v. *Holowecki*, 128 S.,Ct. 1147(2008)...........................19

*Feldkamp Enters., Inc.*, 323 N.L.R.B. No. 206, 1997 WL 394448, at *51-54 (July 11, 1997)..............................................................................40, 42

*Fort Smith & Western R.R. Co.* v. *Mills*, 253 U.S. 206, 208, 64 L. Ed. 862, 40 S. Ct. 526 (1920)................................................................................43

*Fouche* v. *Jekyll Island-State Park Auth.*, 713 F.2d 1418(11th Cir. 1983)..................48

*Gage* v. *Office of the Architect of the Capitol*, Case No. 00-AC-21(CV)(November, 2001)........30

*General Dynamics Land Systems, Inc.*, v. *Cline*, 540 U.S. 581, 586-587, 124 S.Ct.1236(2004)................................................................................19

*Gibson* v. *Missouri Pac. R.R. Co.*, 441 F.2d 784, 787 (5th Cir.), *cert. denied*, 404 U.S. 855, 30 L. Ed. 2d 96, 92 S. Ct. 102 (1971)......................................43

*Goodman Inv. Co.*, 292 N.L.R.B. 340, 340, 349-50.............................................41

*Harris* v. *Forklift Systems, Inc.*, 510 U. S. 17, 21(1993)....................................47

*House Calls, Inc.*, 304 N.L.R.B. 311, 312-13 (1991)...........................................40

*Hudson Distributors* v. *Eli Lilly*, 377 U.S. 386, 391-92, 12 L. Ed. 2d 394, 84 S. Ct. 1273 (1964)..............................................................................43

-v-

*Krieger* v. *Fadley*, 211 F.3d 134 (D.C.Cir.2000)...........................................................48

*Landreth Timber Co.* v. *Landreth*, 471 U.S., 681, 685()1985).......................................27

*Latimer* v. *Sears Roebuck & Co.*, 285 F.2d 152, 157 (5th Cir. 1960)............................42

*Leatherman* v. *Tarrant Count Narcotics Intelligence and Coordination Unit*,
507 U.S. 163, 164(1993)...................................................................................................15

*Louisiana Wholesale Drug Co., Inc.* v. *Biovail Corp.*, 437 F. Supp.2d 79,
2006 WL 1722564 (D.D.C.)...............................................................................................18

*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973)...........................................30

*Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177-178, 2 L. Ed. 60 (1803)...................16

*Mathews* v. *CIR*, 907 F.2d 1173(D.C.Cir. 1990).............................................................17

*Microimage Display Div. of Xidex Corp.*, 297 N.L.R.B. 110, 111,enforced,
924 F.2d 245 (D.C. Cir. 1991)...........................................................................................40

*Mid-South Bottling Co.*, 287 N.L.R.B. 1333, 1342-43 (1988),enforced,
876 F.2d 458 (5th Cir. 1989)..............................................................................................41

*Montclair* v. *Ramsdell*, 107 U.S. 2147, 1521, 2 S.Ct. 391, 27 L.Ed. 431(1883)....................38, 39

*Morton* v. *Mancari*, 417 U.S. 535,  551(1974).......................................................14, 21

*Nat'l. Rifle Ass'n. of Am., Inc.*, v. *Reno*, 216 F.3d 122, 127(D.C.Cir. 2000)...............................27

*NLRB* v. *Lion Oil Co., supra* note 53, 352 U.S. at 290-92.......................................... 43

*National Railroad Passenger Corporation* v. *Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061,
2074(2002)...................................................................................................................44, 46, 47

*Natural Resources Defense Council* v. *Reilly*, 983 F.2d 259(D.C. Cir. 1993)........................12, 18

Newton v. Office of the Architect of the Capitol, Civil Action No. 1:09-cv-01565(RCL),
*Newton I*.................................................................................................................4, 5, 6, 9

Newton v. Office of the Architect of the Capitol, Civil Action No 1:10-cv-01542(RCL),
*Newton II*................................................................................................................4, 5, 6, 9

*Pardo–Kronemann* v. *Donovan*, 601 F.3d 599, 607 (D.C.Cir.2010).............................50

*Perrin* v. *United States*, 444 U.S. 37, 42(1979).................................................14, 21, 27

*Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1554-55)(1987).......................39

*Porter* v. *Shah*, 606 F.3d 809, 818 (D.C.Cir.2010)...........................................51

*Posadas* v. *National City Bank*, 296 U.S. 497, 503(1936)........................................15, 22

*Ramapo Bank* v. *Camp*, 425 F.2d 333, 346 (3d Cir.), cert. denied, 400 U.S. 828,
27 L. Ed. 2d 58, 91 S. Ct. 57 (1970)........................................................43

*Raniola* v. *Bratton*, 243 F.3d 610(2nd Cir. 2001)............................................45

*Rattigan* v. *Holder*,  604 F.Supp.2d 33, 52( D.C.D.C. 2011)........................................51

*Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)........................................30

*Rochon* v. *Gonzales*, 438 F.3d 12121(D.C.Cir. 2006)............................................15

*Rollins* v. *Office of the Clerk of the House of Representatives*,
Case No. 03-HS-105(CV,AG) (December, 2004)........................................30

*Roschen* v. *Ward*, 279 U.S. 337, 339, 73 L. Ed. 722, 49 S. Ct. 336 (1928)...........................27, 42

*Rubin* v. *United States*, 449 U.S. 424, 430(1981)........................................28

*St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502 (1993)........................................30

*Sands Motel*, 280 N.L.R.B. 132, 141 (1986)........................................41

*Schuler* v.  *United States*, 617 F.2d 604, 608(D.C.Cir. 1979)........................................16

*Sea-Land Serv., Inc.* v. *FMC*, 131 U.S.App.D.C. 246, 248-49, 404 F.2d 824,
826-27 (D.C.Cir.1968)........................................28

*Solomon* v. *Office of the Architect of the Capitol*, Case No. 02-AC-62(RP),
December 7, 2005), "*Solomon*"........................................12, 20, 31, 32, 34, 46, 48, 49

*Stella* v. *Graham-Paige Motors Corp.*, 104 F. Supp. 957, 959 (D.N.Y. 1952)...........................43

*Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992(2009)........................................48

-vii-

*Trailways, Inc v. ICC,* 727 F.2d 1284, 1288(D.C. Cir. 1984)......................................17

*TRW Inc.* v. *Anderws*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 151(2001)..........................30

*Texas Dep't. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248 (1981)...............................30

*United States* v. *Bass*, 404 U.S. 336, 339, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971)......................27

*United States* v. *City & County of San Francisco,* 310 U.S. 16, 26(1940)...................43

*United States* v. *Guaranty Trust Co.*, 280 U.S. 478, 485, 74 L. Ed. 556, 50 S. Ct. 212 (1930)...........................................................................43

*United States* v. *Howell*, 11 Wall. 432, 78 U.S. 432, 436(1870).................................27

*United States* v. *Menasche*, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615(1955).........38, 39

*United States* v. *Public Util. Comm'n*, 345 U.S. 295, 312-13, (1953).............................28

*United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241(1989)...................27, 28

*United States* v. *Stewart*, 311 U.S. 60(1940).....................................................17

*United States* v. *Villanueva-Sotelo*, 515 F.3d 1234(D.C.Cir. 2008)..........................27

*Vencor Hosp.-L.A.*, 324 N.L.R.B. No. 35, 1997 WL 471299, at *27-30(Aug. 13, 1997).......40, 42

*Weston* v. *Commonwealth of Pennsylvania*, 251 F.3d 4209(3rd Cir.2001)..................47

*Williams* v. *General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999)...................................45

*Williams* v. *Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389(2000).........................38

*Williamson* v. *Lee Optical Co.*, 348 U.S. 483, 489, 99 L. Ed. 563, 75 S. Ct. 461 (1955)............42

*Zaimi* v. *United States*, 155 U.S.App.D.C. 66, 71, 476 F.2d 511, 516(D.C.Cir. 1973).................27

*Zimmerman Plumbing & Heating Co.*, 325 N.L.R.B. No.5, 1997 WL 728268,at *26, *30 (Nov. 8, 1997)......................................................................40, 42

## STATUTES

2 U.S.C. 1301(3) of the Congressional Accountability Act, "CAA" ............................................24

2 U.S.C. 1302 of the CAA.................................................................................24

2 U.S.C. 1311(a)(1)  of the CAA..................................... 2, 4, 12, 19, 26, 27, 29, 30, 31, 32, 44, 49

2 U.S.C. 1311(b) of the CAA.......................................................................13, 20

2 U.S.C. 1317(a) of the CAA.................................1, 2, 4, 12, 32, 33, 34, 35, 36, 38, 44, 50

2 U.S.C. 1317(b) of the CAA.......................................................................13, 20

2 U.S.C. 1408 of the AA.................................................................................1

2 U.S.C. 1331 of the AA.................................................................................1

2 U.S.C. 1351 of the CAA.............................................................................38

5 U.S.C. Chapter 71....................................................................................38

28 U.S.C. 1291...........................................................................................2

29 U.S.C. 158(a)(3).............................................................................39, 40, 41

29 U.S.C. 215(a)(3), Fair Labor Standards Act ("FLSA")...............................................35

29 U.S.C. 660, OSH Act..............................................................................36

29 U.S.C. 623(d), Age Discrimination in Employment  Act of 1967, "ADEA," ..................19, 35

29 U.S.C. 2002(4), Employee Polygraph Protection Act ("EPPA").............................................35

38 U.S.C. 4311(b), USERRA........................................................................35

42 U.S.C. 2000e-2, ..................................2, 3, 12, 19,  25, 26, 28, 29, 30, 36 37, 42, 51

42 U.S.C. 2000e-3.................................................................................3, 35, 37

42 U.S.C. 2000e-16....................................................................23, 24, 25, 31, 37

42 U.S.C. 12101 *et seq,* Americans with Disabilities Act of 1990, ADA..............................19, 35

42 U.S.C. 12203(b)..................................................................................36

REGULATIONS

Rule 12(b)(1) of the Federal Rules of Civil Procedure, "FRCP"...................................................23

Rule 12(b)(6) of the FRCP.............................................................................................2, , 15, 23

Rule 56 of the FRCP...................................................................................................................23

Architect of the Capitol's Personnel Manual, Chapter 430 - Performance Evaluation Communication Systems, "Chapter 430"...................................................................................7, 9

Architect of the Capitol's Personnel Manual Chapter 752 - Discipline policy, "Chapter 752"............................................................................................................................ 8, 11

OTHER

18 *Moore's Federal Practice* 3D Section 134.02[1][d], noted that "[A] decision of *Id.* at Section 134.02[c][d]." *Id.,* Footnote 3.................................................................................18

Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv.L.Rev. 457, 459(1897)....................42

**13-5012**

===========================================================

**IN THE UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA FEDERAL CIRCUIT**

=========================

MARGARET D. NEWTON,

Plaintiff-Appellant,

v.

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Defendant-Appellee.

===========================

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**APPENDIX**

Jeffrey H. Leib
5104 34th Street, N.W.
Washington, D. C. 20008
(202) 362 - 0682
Attorney for Appellant

November 6, 2013

No.13-5012

================

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

================

MARGARET D. NEWTON

Plaintiff - Appellant,

v.

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Defendant - Appellee.

On Appeal from the United States District Court
for the District of Columbia

==========================

**BRIEF OF PETITIONER MARGARET D. NEWTON**

==========================================

## I. STATEMENT OF JURISDICTION

This is an appeal from the dismissal of a Complaint based on unlawful

employment retaliation taken by appellee Office of the Architect of the Capitol,

"AOC," against appellant in violation of 2 U.S.C. 1317(a) of the Congressional

Accountability Act,"CAA." The District Court had subject matter jurisdiction

pursuant to 2 U.S.C. 1408 and 28 U.S.C. 1331. All claims were dismissed with

prejudice by the November 21, 2012, final order of the Honorable Chief Judge Royce

C. Lamberth, docketed on said date. Appellant timely filed a Notice of Appeal. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1291.

## II. STATEMENT OF THE ISSUES

1. Whether the Court erred in dismissing Count I through Count V of the Complaint based on Rule 12(b)(6)based on the insufficiency of the employer conduct alleged in said discrete claims of retaliation brought pursuant 2 U.S.C. 1317(a) of the CAA when the factual allegations are viewed as true and in the light most favorable to the appellant.

2. Whether the Court erred in dismissing Count VI of the Complaint based on Rule 12(b)(6) of the FRCP based on the insufficiency of the hostile work environment claim brought pursuant 2 U.S.C. 1317(a) of the CAA when the factual allegations are viewed as true and in the light most favorable to the appellant.

## III. STATUTES

### A. DISCRIMINATION PURSUANT TO 2 U.S.C. 1311(a)(1) OF THE CAA

"All personnel actions affecting covered employees shall be made free from any discrimination based on–(1) race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 2000e-2)."

### B. RETALIATION PURSUANT TO 2 U.S.C. 1317(a) OF THE CAA

"It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the

covered employee has initiated proceedings, made a charge, or testified, assisted or participated in any manner in a hearing or other proceeding under this chapter

## C. DISCRIMINATION PURSUANT TO 42 U.S.C. 2000e-2, TITLE VII

Discrimination, pursuant to 42 U.S.C. 2000e-2, in pertinent part states:

"(a) Employer practices

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2 .

## D. RETALIATION PURSUANT TO 42 U.S.C. 2000e-3, TITLE VII

Retaliation, pursuant to 42 U.S.C. 2000e-3, in pertinent part states:

"(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

3

## IV.  UNDISPUTED STATEMENT OF FACTS

### A.  FACTUAL BACKGROUND RESPECTING APPELLANT'S PRIOR PARTICIPATION IN FEDERALLY PROTECTED ACTIVITIES

An undisputed Factual Background is presented respecting appellant's prior participation in protected activities pursuant to the CAA.

Appellant's first Complaint in the District Court, Civil Action No. 1:09-cv-01565(RCL), *Newton I*, was brought pursuant to appellant's first and second Requests for Counseling and participation in mediation in the Office of Compliance in Case No. 08-AC-4S(CV) based on unlawful discrimination in violation of 2 U. S.C. 1311(a)(1 of the CAA and Case No. 08-AC-S2(CV, RP), containing allegations respectively based on discrimination based on race in violation of 2 U.S.C. 1311(a)(l) of the CAA and unlawful retaliation based on violation of 2 U.S.C. 1317(a) of the CAA based on appellant's on going and continuing participation in federally protected activities. *See* Paragraphs  2, 10, and 11 of the instant Complaint and *Newton I*.

Appellant's second Complaint in the District Court, Civil Action No. 1:10-cv-01542(RCL), *Newton II*, was brought pursuant to the additional Request for Counseling and participation in mediation in the Office of Compliance in respective Requests for Counseling submitted in the Office of Compliance in Case No.

4

l0-AC-71(CV, RP) and Case No.10-AC-71(CV, RP) based on discrimination based on race in violation of 2 U.S.C. 1311(a)(1) and retaliation based on violation of 2 U.S.C. 1317(a) of the CAA based on Appellant's on going and continuing participation in federally protected activities under the CAA pursuant to Appellant's previously submitted Requests for Counseling and *Newton I*, appellant's first Complaint submitted in the District Court. See Paragraphs 2, 10 and 12 of the instant Complaint and *Newton II*.

The instant matter, Civil Action No. 1:ll-cv-02302(RCL), "*Newton Ill*" is the third of three Complaints submitted by appellant in the District Court and is based on retaliation engaged in by the Defendant based on Appellant's on going and continuing participation in federally protected activities under the CAA pursuant to her respective Requests for Counseling submitted in the Office of Compliance and respective Complaints submitted in the District Court in *Newton I* and *Newton II*.

## B. GENERAL FACTUAL BACKGROUND

At all times relevant herein, Appellant was a GS-12 Human Resources Specialist (Retirement) in the Employee Benefits and Services Branch of Defendant's former Human Resources Management Division and current Human Capitol Management Division, "HCMD. See Comp. ¶ 13.

At all times relevant herein, Mary Yates, Chief of the Employee Benefits and

5

Services Branch, was appellant's first line supervisor. <u>See</u> Comp. ¶14.

At all times relevant herein, Robert Wied, Deputy Chief, Human Capitol Officer for Operations, was appellant's second line supervisor. <u>See</u> Comp.¶ 15.

On or about April 4, 2011, Chief Yates of the Employee Benefits and Services Branch and  first line supervisor to appellant, ordered the Appellant to provide her with two retirement cases the Appellant had already completed pursuant to the latter's retirement duties and responsibilities. <u>See</u> Comp. ¶ 16.

Appellant, on or about April 4, 2011, had learned that Edgard Martinez, an Associate Attorney in Defendant's Office of General Counsel instructed Chief Yates of the Employee Benefits and Services Branch to subject the completed work of the Appellant to scrutiny to discover incompetence and fault in the performance by the Appellant of her retirement duties and  responsibilities. <u>See</u> Comp. ¶ 17.

Appellant, when ordered to provide said complected files to Chief Yates, advised Chief  Yates she considered the order to be workplace harassment engaged in by management to chill and deter the Appellant from participating in federally protected activities pursuant to her prosecution of *Newton I* and *Newton II*. <u>See</u> Comp. ¶ 18.

This evaluation by Chief Yates of the performance of the appellant's duties and responsibilities, per the instructions of Attorney Martinez, was an evaluation

6

procedure separate and distinct from the half-year and yearly performance evaluations conducted pursuant to the Architect of the Capitol's Personnel Manual, Chapter 430 - Performance Evaluation Communication Systems, "Chapter 430." See Comp. ¶ 19.

On or about June 24, 2011, Chief Yates of the Employee Benefits and Services Branch and first line supervisor to the Plaintiff, was out of the workplace on leave. See Comp. ¶ 20.

Lisa Maltbie, a GS-13 specializing in "Work Life" programs and with no experience in "Retirement" functions, was made Acting Chief of the Employee Benefits and Services Branch and Acting Supervisor of the appellant. See Comp. ¶ 21.

Ms. Maltbie, possessing no skill set or experience in assessing, evaluating or determining "Retirement" functions and benefits, as Acting Chief was provided with the authority to supervise, criticize and undermine the work required to be performed by the appellant and did so negatively criticize and undermine the work to be performed and was performed by the Plaintiff. See Comp. ¶ 22.

Ms. Maltbie, as Acting Chief, was unable to answer simple questions respecting retirement and interrupted the work Appellant performed by the appellant by referring disgruntled employees to the appellant while the appellant was

7

performing other retirement functions. See Comp. ¶ 23.

Ms. Maltbie, by encroaching upon the appellant in her office space and venting her frustrations upon the appellant, added to the already existing hostile working environment respecting the Appellant and her employment in the Employee Benefits and Services Branch of the HCMD. See Comp. ¶ 24.

On July 21, 2011, appellant received a July 20, 2011, disciplinary written letter of counseling issued pursuant to the Architect of the Capitol's Personnel Manual Chapter 752 - Discipline policy, "Chapter 752." See Comp. ¶ 25.

Pursuant to said Chapter 752, a progressive discipline policy, the July 20,2011, disciplinary letter of counseling could be used as support for the issuance of further discipline up to and including termination of the appellant from employment. See Comp. ¶ 26.

The July 20,2011, disciplinary written letter of counseling was issued following a July 18, 2011 meeting attended by the appellant, Chief Yates and Robert Wied, Deputy Chief Human Officer for Operations and second line supervisor to the appellant at which time Appellant was confronted with allegations respecting deficiency in her performance of duties and responsibilities. See Comp. ¶ 27.

The July 20, 2011, disciplinary written letter of counseling, cited the appellant for "poor customer service, one of the five critical elements examined on a half year

8

and yearly "Performance Evaluation" to be issued to the Appellant pursuant to the Architect of the Capitol's Personnel Manual Chapter 430 - Performance Evaluation Communications Systems, Chapter 430." See Comp.¶ 28.

The Plaintiff, by Memorandum of July 21, 2011, responded to the "allegations cited by Chief Yates and Deputy Chief Wied in their respective meeting of July 18, 2011 and the July 20, 2011, disciplinary letter of counseling issued to the Appellant pursuant to Chapter 752. See Comp. ¶ 29.

The appellant, by Memorandum of July 21,2011, noted in part that she was refused a copy of the documentation allegedly used in support of the July 20,2011 disciplinary written letter of counseling, was denied a copy of the documentation alleging violations by the appellant in the performance of her duties and was required to make statements respecting said alleged violations absent a copy of the allegations brought against her. See Comp. ¶ 30.

Plaintiff, by her July 21, 2011 Memorandum, noted that the July 20, 2011, disciplinary written letter of counseling under said circumstances evidenced management's hostility towards the appellant resulting from her participating in the federally protected activities pursuant to her prosecution of *Newton I* and *Newton II* pursuant to the CAA. See Comp. ¶ 31.

Plaintiff, by her July 21, 2011 Memorandum, noted that she was still her

9

accountable for performing the higher GS-13 duties and responsibilities absent promotion to said higher GS-13 grade. See Comp. ¶ 32.

Plaintiff, by her July 21, 2011 Memorandum, noted that she was required to perform additional duties resulting from the absence of Ms. Rebecca Vento, the Senior Specialist (Retirement), from May 18, 2011 and thereafter pursuant to the retirement of Ms. Vento from employment with Defendant, effective May 31,2011. See Comp. ¶ 33.

Plaintiff, by her July 21,2011 Memorandum, further noted that management continued to refuse to provide any additional support in the absence of personnel to perform retirement duties and responsibilities. See Comp. ¶ 34.

On or about two weeks thereafter in August, 2011, Deputy Chief Wied, issued Appellant another disciplinary written letter of counseling pursuant to Chapter 752 based on a failure in customer service respecting the timely engraving of "flag" boxes and "retirement" certificates to a retiree. See Comp. ¶ 35.

Appellant, in responding to said August, 2011, disciplinary written letter of counseling, notified Deputy Chief Wied that she was in compliance with the procedures that she and Deputy Chief Wied had agreed upon respecting the "flag" boxes and "retirement" certificates; the subject matter for which the Appellant received said August, 2011, disciplinary letter of counseling. See Comp. ¶ 36.

10

The August, 2011, disciplinary written letter of counseling cited the Appellant for "poor customer service," one of the five critical elements examined on a half year and yearly "Performance Evaluation" to be issued to the appellant. See Comp.¶ 37.

Pursuant to said Chapter 752, a progressive discipline policy, the August, 2011, disciplinary letter of counseling could be used as support for the issuance of further discipline up to and including termination of the Appellant from employment. See Comp. ¶ 38.

## V. SUMMARY OF ARGUMENT

Appellant contends the District Court , by misapprehending the broad standard of "employer conduct" made actionable by the statutory text of the CAA statutes respecting discrimination and retaliation as one and the same as the narrower standard of "employer conduct" made actionable for discrimination and retaliation under Title VII, incorrectly applied said narrower Title VII standards of "employer conduct" to the broader CAA discrimination and retaliation statutes

Appellant further contends the District Court, in contravention of the expressed text of said CAA statutes, violated the necessary consistency of the text of the CAA retaliation statute with the text of the CAA discrimination statute and violated the necessary consistency of the text of the retaliation statute with the statutory scheme of the CAA respecting the eleven workplace statutes made applicable to the CAA and

11

effected thereby an implied repeal and veto of the Congressional intent implementing the proprietary interest of Congress in the operation of Congress and its instrumentalities. See *Natural Resources Defense Council* v. *Reilly*, 983 F.2d 259(D.C. Cir. 1993).

With due deference, appellant contends that the District Court erred by substituting and applying this Circuit's narrower Title VII standard for discrimination and retaliation for the broader standards established by the statutory language of said CAA statutes and formal adjudication by the Board of Directors of the Office of Compliance, the "Board," pursuant to its delegated authority to make rules carrying the force of law and deference consistent with the prohibitions of discrimination and retaliation set forth below in the respective statutory language:

a. DISCRIMINATION: "All personnel actions affecting covered employees shall be made free from any discrimination based on–(1) race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 2000e-2)." See 2 U.S.C. 1311(a)(1) of the CAA.

b. RETALIATION: "It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted or participated in any manner in a hearing or other proceeding under this chapter. See 2 U.S.C. 1317(a) of the CAA and *Britton* v. *Office of the Architect of the Capitol,* Case No. 02-AC-20(CV, RP), (May 23, 2005), *"Britton,"* and *Solomon* v. *Office of the Architect of the Capitol,* Case No. 02-AC-62(RP), December 7, 2005), *"Solomon."*

12

The District Court, by incorrectly viewing the scope of discrimination and retaliation under the CAA as the same as Title VII, determined said statutes should be interpreted as "if they were one law" and applies the Circuit's narrower scope of Title VII to the CAA provisions when the broader statutory scope of said CAA provisions is made evident by the expressed statutory language of the CAA.

Notably, Title VII regulates the private sector and executive branch of the Federal Government and is specific in its terms for regulating said prohibitions. The CAA regulates the Legislative Branch. Its standards for prohibited activity, based solely on statutory language, is broader in scope than Title VII prohibitions.

Congress could have but did not replicate or incorporate by reference Title VII's narrower statutory language and statutory scheme for the broader CAA discrimination and retaliation as it did by applying Title VII remedies to the CAA. See 2 U.S.C. 1311(b) and 2 U.S.C. 1317(b). In enacting the new and unique Administrative Judicial Dispute Resolution Procedures of the CAA, Congress determined its proprietary interests for itself and its instrumentalities were to be regulated by legislation specific to Congress and its instrumentalities.

The "two acts" are capable of coexistence even if they produce differing results when applied to the same factual situation. The statutory provisions at issue cannot be said to be in "irreconcilable conflict" in the sense that there is a positive

13

repugnancy between them or that they cannot mutually coexist. They do not have to be harmonized. "When two statues are capable of coexistence, it is the duty of the courts ...to regard each as effective." *Morton* v. *Mancari*, 417 U.S. 535, 551(1974).

The specific statutory purposes of the CAA and Title VII can be served absent interference by each act with the implementation of the other. Neither act covers the subject of the other or is intended as a substitute of the other. The CAA, neither expressly or implicitly, conflicts with, repeals or affects the implementation of Title VII and the areas it regulates. There is no necessary conflict.

Congress, by enacting specific legislation, rejects the narrower Title VII standard for discrimination. There is no special reason for questioning the legislative intent to deprive the CAA of what it says. It is a fundamental canon of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bowsher* v. *Merck & Co.*, 460 U.S. 824, 103 S.C..1587(1983) citing *Perrin* v. *United States*, 444 U.S. 37, 42(1979).

The conflict that has arisen between the two statutes is created solely by the Court's interpretation of the CAA contravening the expressed intent of Congress. The Court, by applying and substituting Title VII standards for the CAA standards, ignores, rejects, and edits out the standards established by Congress for itself.

The Court's interpretation impliedly repeals the expressed intent of Congress.

14

Repeals by implication, "absent a clearly expressed congressional intention," are strongly disfavored. *Branch* v. *Smith*, 538 U.S. 254(2003).

This is not the "usual" case of implied repeal respecting two acts in irreconcilable conflict where the later act, to the extent of the conflict, constitutes an implied repeal of the earlier act or the later act covers the whole subject of the earlier one and is clearly intended as a substitute and repeal of the earlier act. It is evident that the CAA and Title VII fall into neither category. Neither act interferes with the implementation of the other. Moreover, the intention of Congress to repeal must be clear and manifest and that necessary statutory language and said intent is lacking and deprives the CAA of its meaning intended by Congress. See *Posadas* v. *National City Bank*, 296 U.S. 497, 503(1936).

## VI. ARGUMENT

### A. STANDARD OF REVIEW

This Court reviews *de novo* a District Court Order granting a motion to dismiss based on Rule 12(b)(6) of the FRCP. *Rochon* v. *Gonzales*, 438 F.3d 12121(D.C.Cir. 2006) citing *Covad Communications Co.* v. *Bell Atlantic Corp.*, 398 F.3d 666, 670-71(D.C.Cir. 2005). See also *Croixland Properties Ltd.* v. *Corcoran*, 174 F.3d 213, 215(D.C.Cir. 1999). The Court is to treat the Complaint's factual allegations as true. See *Leatherman* v. *Tarrant Count Narcotics Intelligence and*

15

*Coordination Unit*, 507 U.S. 163, 164(1993), and must grant appellant "the benefit of all inferences that can be derived from the facts alleged." *Schuler* v. *United States*, 617 F.2d 604, 608(D.C.Cir. 1979) and *Croixland Properties*, *supra*, 174 F.3d at 215.

## B. THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE UNIQUE PROVINCE OF THE JUDICIARY

The "employer conduct" argument - whereby Defendant, absent legal authority and support therefor, applies the narrower standard for "employer conduct" made actionable under Title VII to the instant CAA claims of discrimination and retaliation in rejection of the broader standard for "employer conduct" established under the CAA - raises a conflict in principles of statutory interpretation: the principle that the judiciary is responsible for the final determination of the meaning of statutes versus the statutory language of the CAA and the substantial deference to be afforded the construction of the CAA as administered by the Board of Directors of the Office of Compliance to whom said authority is entrusted, the "Board." See *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council*, 467 U.S. 837, & n. 14(1984), "*Chevron.*"

Plaintiff recognizes, beyond question, that it is the unique province of the judiciary to "say what the law is." *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177-178, 2 L. Ed. 60 (1803). However, the exercise of this function does not preclude

16

affording deference to the Board's construction of its enabling statute.  Deference to an agency's interpretation constitutes a judicial determination that Congress has delegated said function to the Board when said interpretation falls within the scope of that delegation.  See *Trailways, Inc v. ICC,* 727 F.2d 1284, 1288(D.C. Cir. 1984).

The "employer conduct" argument sounding *in pari materia, i.e.,* where the "standard" for "employer conduct" under Title VII is construed and used as the "standard" for "employer conduct" under the CAA, conflicts with cardinal rules of statutory construction and fails whether used in support of a dismissal based on Rule 12(b)(1), Rule 12(b)(6) or Rule 56 of the FRCP.

## C.  THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE DECISIONS OF THE DISTRICT COURTS

Plaintiff contends that in error, the District Courts in this Circuit rely on and cite the decisions of other District Courts which have applied Title VII standards to allegations of discrimination and retaliation brought under the CAA; statutes not *in pari materia* with the Title VII discrimination and retaliation statutes.

The Court noted in *Mathews* v. *CIR*, 907 F.2d 1173(D.C.Cir. 1990) that "[I]t would be manifestly inappropriate to rely on statues, regulations and cases having limited purpose and applicability to interpret, in derogation of a plain meaning, another statue having an unrelated purpose.  As the Supreme Court stated in *United*

17

*States* v. *Stewart*, [311 U.S. 60(1940)],    [n]o collection of other statutes can be decisive in determining what the instant statute means."

The Court, citing 18 *Moore's Federal Practice* 3D Section 134.02[1][d], noted that "[A] decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Louisiana Wholesale Drug Co., Inc.* v. *Biovail Corp.*, 437 F. Supp.2d 79, 2006 WL 1722564 (D.D.C.). The Court noted "[H]owever, [that] `[a] court should give considerable weight to its own previous decisions unless and until they have been overruled or undermined by the decision of a higher court or a statutory overruling.' *Id.* at Section 134.02[c][d]." *Id.,* Footnote 3.

Plaintiff's counsel, mindful of the disposition of said citations and to avoid the application of *stare decisis* and even the persuasive weight of said prior decisions in the immediate Circuit, asserts legal error in the application of said District Courts' decisions sounding *in pari materia*; a misapprehension and contravention of the expressed statutory text and scheme of the CAA implementing the eleven workplace statutes made applicable to the CAA effecting an implied repeal and veto of the Congressional intent to implement the proprietary interest of Congress in the operation of Congress and its instrumentalities. See *Natural Resources Defense Council* v. *Reilly*, 983 F.2d 259(D.C. Cir. 1993).

18

Plaintiff reiterates below the cautionary preface issued by the Supreme Court respecting the application of rules under Title VII to the rules under the Age Discrimination in Employment Act of 1967, "ADEA," and the rules under the Americans With Disabilities Act of 1990, "ADA:"

"EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 20000e *et seq.*, and the Americans with Disabilities Act of 1990, as amended 42 U.S.C. 12101 *et seq.* While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. Cf. *General Dynamics Land Systems, Inc.*, v. *Cline*, 540 U.S. 581, 586-587, 124 S.Ct. 1236(2004). This is so even if the EEOC forms and the same definition o f charge apply in more than one type of discrimination case." *Federal Express Corporation* v. *Holowecki*, 128 S.,Ct. 1147(2008).

With due deference, Plaintiff contends that the District Courts have erred by substituting and applying the Circuit's narrower Title VII standard for retaliation for the broader standard established by formal adjudication by the Board of Directors of the Office of Compliance, the "Board," pursuant to its delegated authority to make rules carrying the force of law and deference consistent with the statutory prohibitions of discrimination and retaliation set forth below:

a. DISCRIMINATION: "All personnel actions affecting covered employees shall be made free from any discrimination based on–(1) race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 2000e-2)." See 2 U.S.C. 1311(a)(1) of the CAA.

19

b. RETALIATION: "It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted or participated in any manner in a hearing or other proceeding under this chapter. See 2 U.S.C. 1317(a) of the CAA and *Britton* v. *Office of the Architect of the Capitol,* Case No. 02-AC-20(CV, RP), (May 23, 2005), "*Britton,*" and *Solomon* v. *Office of the Architect of the Capitol,* Case No. 02-AC-62(RP), December 7, 2005), "*Solomon.*"

The District Courts, by incorrectly viewing the broader scope of discrimination and retaliation under the CAA as the same as the narrower scope of discrimination and retaliation under Title VII, determined said statutes should be interpreted as "if they were one law" and apply the Circuit's narrower scope of Title VII to said CAA provisions when the broader statutory scope of said CAA provisions is made evident by the expressed statutory language of the CAA.

Congress could have but did not replicate or incorporate by reference Title VII's narrower statutory language and statutory scheme for the broader scope of discrimination and retaliation under the CAA as it did by expressly applying Title VII remedies to the CAA. See 2 U.S.C. 1311(b) and 2 U.S.C. 1317(b).

In enacting the new and unique Administrative Judicial Dispute Resolution Procedures of the CAA, Congress determined its proprietary interests for itself and its instrumentalities were to be regulated by legislation specific to Congress and its instrumentalities.

The "two acts" are capable of coexistence even if they produce differing results when applied to the same factual situation. The statutory provisions at issue cannot be said to be in "irreconcilable conflict" in the sense that there is a positive repugnancy between them or that they cannot mutually coexist. They do not have to be harmonized. "When two statues are capable of coexistence, it is the duty of the courts ...to regard each as effective." *Morton* v. *Mancari*, 417 U.S. 535, 551(1974).

The specific statutory purposes of the CAA and Title VII can be served absent interference by each act with the implementation of the other. Neither act covers the subject of the other or is intended as a substitute of the other. The CAA, neither expressly or implicitly, conflicts with, repeals or affects the implementation of Title VII and the areas it regulates. There is no necessary conflict.

Congress, by enacting specific legislation, rejects the narrower Title VII standard for discrimination. There is no special reason for questioning the legislative intent to deprive the CAA of what it says. It is a fundamental canon of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bowsher* v. *Merck & Co.*, 460 U.S. 824, 103 S.C..1587(1983) citing *Perrin* v. *United States*, 444 U.S. 37, 42(1979).

The conflict that has arisen between the two statutes is created solely by the Court's misinterpretation of the CAA contravening the expressed intent of Congress.

21

The Court, by applying and substituting Title VII standards for the CAA standards, ignores, rejects, and edits out the standards established by Congress for itself.

The Court's interpretation impliedly repeals the expressed intent of Congress. Repeals by implication, "absent a clearly expressed congressional intention," are strongly disfavored. *Branch* v. *Smith*, 538 U.S. 254(2003).

This is not the "usual" case of implied repeal respecting two acts in irreconcilable conflict where the later act, to the extent of the conflict, constitutes an implied repeal of the earlier act or the later act covers the whole subject of the earlier one and is clearly intended as a substitute and repeal of the earlier act. It is evident that the CAA and Title VII fall into neither category. Neither act interferes with the implementation of the other. Moreover, the intention of Congress to repeal must be clear and manifest and that necessary statutory language and said intent is lacking and deprives the CAA of its meaning intended by Congress. See *Posadas* v. *National City Bank*, 296 U.S. 497, 503(1936).

### D.  THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE CAA AND TITLE VII ARE NOT *IN PARI MATERIA*

Defendant's argument sounding *in pari materia*, where the standard used for "employer conduct" made actionable under Title VII is used for "employer conduct" made actionable under the CAA, conflicts with cardinal rules of statutory

construction and is without merit whether asserted in support of a dismissal motion based on Rule 12(b)(1), Rule 12(b)(6) or Rule 56 of the FRCP.

### 1.   THE PRINCIPLE OF *IN PARI MATERIA* AND CONFLICTING PRINCIPLES OF STATUTORY CONSTRUCTION

Pursuant to the well-settled principle of law, statutes that are" *in pari materia* are to be construed together; that the different statutes are to be construed as one; that they must be viewed together in all their parts' and if, by a fair construction, the whole can stand together, it is the duty of the court to put that construction upon them." *Fanning* v. *Gregoire*, 57 U.S. 524, 528(1853).

On analysis, there are critical differences between the CAA and Title VII which at all times adheres to the constitutional principle of the separation of powers.

The CAA was enacted in 1995 and effective in 1996; respectively thirty five and thir--ty six years subsequent to the enactment of Title VII for the private sector. The CAA was enacted in 1995, twenty five subsequent to the enactment of Title VII and twenty three years subsequent to the enactment of 42 U.S.C. 2000e-16, whereby the entitlements of Title VII, as enacted and amended, were provided to the employees of the Executive Branch of the Federal government and the excepted employees of the Library of Congress, the General Accounting Office and General Printing Office, Legislative Branch employees.

23

The CAA, passed by a Congress different than the Congress that enacted Title VII and 42 U.S.C. 2000e-16, relates to a limited pool of legislative employees; a subject group of employees, separate and distinct from the private sector and Federal Executive sector.

Notably, Title VII regulates employment within the private sector and Executive Branch of the Federal Government whereas the CAA regulates employment within the Legislative Branch of the Federal Government and provides the legislative employees identified hereafter, a limited prospective pool of employees in comparison to the enormous number of employees in the private sector and Executive Branch of the Federal Government: the legislative employees of the Senate and House of Representative, the Capitol Guide Board, the Capitol Police, the Congressional Budget Office, the Defendant Office of the Architect of the Capitol, the Office of the Attending Physician, the Office of Compliance and the Office of Technology Assessment. See 2 U.S.C. 1301(3).

Notably, Congress, pursuant to 2 U.S.C. 1302 and the expressed statutory limitations expressed therein, made eleven workplace laws applicable to the limited pool of legislative employees identified above, whereas Title VII's scope in comparison is limited to discrimination based on race, color, religion, sex, or national origin and retaliation based on "opposition" and "participation" arising from the sole

24

predicate of Title VII

Congress actively engaged in said matters affecting Congress by creating an independent Congressional tribunal in which primary interpretation and application of the substantive rules of the Congressional Accountability Act were confided in the Board of Directors of the independent Office of the Compliance, the "Board."

Congress actively engaged in said matters affecting Congress by enacting substantive rules of law to be enforced not by any tribunal competent to apply law generally to parties, but by the Board; the independent Congressional tribunal in which primary interpretation and application of said rules were confided.

Congress actively engaged in said matters affecting Congress by prescribing particular CAA procedures for counseling, compliant, notice, mediation, hearing and decision, and judicial relief pending a final administrative order; procedures unique and distinct from the procedures implementing Title VII and 42 U.S.C. 2000e-16.

Complaints, brought pursuant to the Administrative Judicial Dispute Resolution Procedures of the CAA, are processed in the specially created independent Office of Compliance pursuant to procedures separate and distinct from the administrative procedures used to process complaints under Title VII for the private sector and Federal Executive sector indicating yet another relevant and material difference between the CAA and Title VII.

25

Congress evidently considered and determined that centralized administration by the Board was necessary to obtain uniform application of CAA substantive rules and to avoid conflicting adjudications from a multiplicity of judicial fora/forums.

There is no question that Congress was aware of the analogy between Title VII and CAA, however, based on practical distinctions between the CAA comprehensive statutory scheme and Title VII's statutory scheme and to remain consistent with the separation of powers principle, it is clear that the Congress did not draft the CAA as a mirror image to the comparable legislation governing private and public sector Title VII law. The CAA, on its face, was neither enacted as a supplement to Title VII nor enacted to supercede the Title VII scheme and implicitly recognizes the separation of powers intended by Congress by enacting a statute significantly different from Title VII.

## 2. DISCRIMINATION BASED ON SEX AND GENDER UNDER THE CAA; AND, GENERAL PRINCIPLES OF STATUTORY CONSTRUCTION

The "standard" of "employer conduct" made "actionable" for a claim of discrimination under the CAA is expressed in the statutory language of 2 U.S.C. 1311(a)(1): "All personnel actions...shall be made free from any discrimination based on–...sex..., within the meaning of the Civil Rights Act of 1964(42 U.S.C. 20000e-2."

Courts, in construing statutes, first look to the language of the legislation. "The

26

task of resolving the dispute over the meaning of [2 U.S.C. 1311(a)(1)] begins where all such inquiries must begin: with the language of the statute itself." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241(1989) citing *Landreth Timber Co.* v. *Landreth*, 471 U.S., 681, 685()1985), "*Ron Pair.*" See also *United States* v. *Bass*, 404 U.S. 336, 339, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971). *Caminetti* v. *United States*, 242 U.S. 470, 485(1917); *Zaimi* v. *United States*, 155 U.S.App.D.C. 66, 71, 476 F.2d 511, 516 (D.C.Cir. 1973).

Further, it is "[a] fundamental canon of statutory construction ... that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) citing *Burns* v. *Alcala* , 420 U.S. 575, 580-581(1975). The ordinary, contemporary and common meaning of "all" excludes qualification.

The Court noted in *United States* v. *Villanueva-Sotelo*, 515 F.3d 1234(D.C.Cir. 2008) that "[T]he *first* principle of statutory construction, however, is to apply common sense in the reading of language. See *U.S.* v. *Howell*, 11 Wall. 432, 78 U.S. 432, 436(1870)("[O]ne of the first canons of construction teaches us to avoid if possible [a result] which is at war with the common sense...."); *Roschen* v. *Ward*, 279 U.S. 337, 339, 49 S.Ct. 336(1929)("[T]here is no canon against using common sense in construing laws as saying what they obviously mean."); *Nat'l. Rifle Ass'n. of Am.,*

27

*Inc.*, v. *Reno*, 216 F.3d 122, 127(D.C.Cir. 2000)."

Where, as here, using common sense, "when the words of [the] statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut National Bank* v. *Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). See also *Rubin* v. *United States*, 449 U.S. 424, 430(1981).

In this case the statutory language before the Court that "all" "**claims**" were "actionable" under the CAA expresses Congressional intent  "with sufficient precision so that reference to legislative history and to [Title VII] practice is hardly necessary." *Ron Pair, supra*, 489 U.S. at 241.

Where, as here, using common sense, the statutory language is plain, "the sole function of the courts is to enforce it according to its terms." *Ron Pair, supra,* 489 U.S. at 241 citing *Caminetti, supra*, 242 U.S. at 485.

Where, as here, using common sense, the ordinary, contemporary and common meaning of the expressed statutory language "admits of no more than one meaning, the duty of interpretation does not arise...." *Caminetti, supra.*, 242 U.S. at 485. See also *Callanan* v. *United States*, 364 U.S. 587, 594-95(1961); *United States* v. *Public Util. Comm'n*, 345 U.S. 295, 312-13, (1953); *Sea-Land Serv., Inc.* v. *FMC*, 131 U.S.App.D.C. 246, 248-49, 404 F.2d 824, 826-27 (D.C.Cir.1968); *District of Columbia Nat'l Bank* v. *District of Columbia*, 121 U.S.App.D.C. 196, 198, 348 F.2d

808, 810 (D.C.Cir. 1965).

That said "employer conduct" alleged by Plaintiff qualify as "actionable" claims of discrimination under 2 U.S.C. 1311(a)(1)  is also mandated by the grammatical structure of the statute and the cross reference to Title VII therein.

"Within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 2000e-2)" refers to the statutory basis of the claim: "race, color, religion, sex, or national origin."   The respective prefatory term "all" and phrase "all personnel actions," stand independent of the statutory basis of the claim: "race, color, religion, sex, or national origin within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 20000e-2)."

It is clear from the plain, customary and common sense use of said statutory language that by the term "all" Congress intended no limitation respecting the "employer conduct" made actionable for claims of discrimination under the CAA.

As the meaning of said statutory term is clear there is no need of recourse to the aids available in the process of construction: to the legislative history which is limited, to analogy, to practice and to the dictionary.

## E.  DISCRIMINATION PURSUANT TO THE CAA AND TITLE VII

The "**basis**" of a claim of discrimination pursuant to 2 U.S.C. 1311(a)(1) of the CAA is the same "basis" of a claim of discrimination "within the meaning of section

703 of the Civil Rights Act of 1964(42 U.S. 2000e-2)(Title VII): race, color, religion, sex or national origin." Discrimination based on weight is not actionable under either statute. .

The "**framework**" for proving a claim of discrimination based on race, color, religion, sex or national origin pursuant to 2 U.S.C. 1311(a)(1) of the CAA is the same "framework" for proving a claim of discrimination based on race, color, religion, sex or national origin pursuant to Title VII. The Board of Directors of the Office of Compliance, the "Board," applies the Title VII burden-shifting scheme established by the Courts in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), as refined in *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502 (1993), *Texas Dep't. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248 (1981), and *Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) for determining claims of discrimination brought pursuant to 2 U.S.C. 1311(a)(1) of the Congressional Accountability Act. See *Culver* v. *Office Supply Service, Office of the Chief Administrative Officer, United States House of Representatives*, Case No. 96-AC-55(AG, CV, FM)(April, 1998); *Gage* v. *Office of the Architect of the Capitol*, Case No. 00-AC-21(CV)(November, 2001); *Rollins* v. *Office of the Clerk of the House of Representatives*, Case No. 03-HS-105(CV,AG) (December, 2004); *Britton* v. *Office of the Architect of the Capitol*, Case No. 02-AC-20(CV, RP)(May, 2005), *"Britton;"*

30

*Solomon* v. *Office of the Architect of the Capitol*, Case No. 02-AC-62(RP)(December, 2005), "*Solomon*;" *Duncan* v. *Office of the Architect of the Capitol*, Case No. 02-AC-59(RP)(September, 2006).

The "**employer conduct**" made "actionable" for a claim of discrimination under the CAA is expressed in the statutory language of 2 U.S.C. 1311(a)(1): "All personnel actions..."

The "employer conduct" made "actionable" for a claim of discrimination under Title VII is expressed in the statutory language of 42 U.S.C. 2000e-2:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2 .

By statutory language distinct from the statutory language of Title VII and 42 U.S.C. 2000e-16, Congress in 2 U.S.C. 1311(a)(1), provided an encompassing, all inclusive  statutory category for the "employer conduct" made actionable on a claim of discrimination respecting Title VII, the Americans With Disability Act, the Rehabilitation Act and the Age in Discrimination Act: "all."

The Congressional intent to preclude any limiting of the "employer conduct"

31

made actionable for claims of discrimination under the CAA based on race, color, religion, sex, or national origin is refuted by using the word "all" in the plain statutory language of 2 U.S.C. 1311(a)(1) of the CAA.

The use of said plain statutory language indicates the necessary Congressional intent to reject and preclude the use of the limiting language of Title VII and substantive case law precedent established thereunder.

This difference in the statutory language respecting discrimination between the CAA and Title VII is relevant and material as it constrains the application of the use of the narrower construction of Title VII.

More importantly it recognizes implicitly the separation of powers intended by Congress in enacting a statute significantly different from Title VII

### F.   RETALIATION PURSUANT TO THE CAA AND TITLE VII

The "**basis**" of a claim of retaliation pursuant to 2 U.S.C. 1317(a) of the CAA intimidation, reprisal against, or otherwise discrimination because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted or participated in any manner in a hearing or other proceeding under this chapter. See 2 U.S.C. 1317(a) of the CAA and *Britton, supra,* and *Solomon, supra.*"

The "**basis**" of a claim of retaliation pursuant to Title VII is "(a) Discrimination

32

for making charges, testifying, assisting, or participation in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment,..., because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

The **"framework"** for proving a claim under the CAA is an employee's opposition or participation; intimidation, reprisal and/or otherwise discrimination taken against the employee; an unlawful retaliatory adverse employment action reasonably likely to deter opposition and/or participation in future protected activities under the CAA; and, a causal connection between the employee's opposition and/or participation and the intimidation, reprisal and/or otherwise discrimination taken against the employee;

The **"framework"** for proving a claim under Title VII is an employee's opposition or participation; a material adverse action; and, a causal connection between the employee's opposition and/or participation and the material adverse action taken against the employee.

The **"employer conduct"** that is made "actionable" for a claim of retaliation pursuant to 2 U.S.C. 1317(a) of the CAA, whether based on discrimination or

33

retaliation, and irrespective of which one of the eleven statutes provides the predicate for the claim of retaliation is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party or others from engaging in protected activity."   See *Britton* v. *Office of the Architect of the Capitol*, Case No. 02-AC-20(CV, RP)(May 23, 2005), "*Britton,*" and *Solomon* v. *Office of the Architect of the Capitol*, Case No. 02-AC-62(RP)(December 7, 2005), "*Solomon.*"

The "**employer conduct**" that is made "actionable" on a claim of retaliation pursuant to Title VII in the instant Circuit is set forth in *Baird* v. *Gotbaum*, 662 F.3d 1246, 1248(D.C.Cir. 2011): "'an adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant in benefits.'"

\* \* \* \* \* \* \*

The Congressional intent to preclude any limiting of the "employer conduct" made actionable for claims of retaliation under the CAA based on "opposition" and/or "participation" was determined by the Board in *Britton, supra,* pursuant to the use of "intimidation" and "otherwise discriminate" in the expressed statutory language of 2 U.S.C. 13171(a) of the CAA.

In *Britton, supra,* and reiterated thereafter in *Solomon* v. *Office of the Architect*

34

*of the Capitol*, Case No. 02-AC-62(RP)(December 7, 2005), *"Solomon."* the Board, the entity authorized to administer and execute the CAA, consistent with the intent of Congress, rejected the "employer conduct" standard of Title VII based on the use of "intimidation" in the expressed statutory language of 2 U.S.C. 13171(a) of the CAA, determined that Congress intended.

The Board determined, by reference to "intimidation" in the text of the statute, that the "employer conduct" prohibited by 2 U.S.C. 1317(a) of the CAA was broader than the retaliation provisions in Title VII, 42 U.S.C. 2000e-3, the retaliation provisions in the ADEA, 29 U.S.C. 623(d), and the retaliation provisions in the ADA, 42 U.S.C. 12203(a). These statutory provisions do not refer to intimidation, and only prohibit "discrimination" because an employee has engaged in certain protected activities.

The Board further determined that 2 U.S.C. 1317(a) was also broader than the retaliation provisions in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 215(a)(3), which makes it unlawful for an employer to "discharge or in any other manner discriminate" against any employee who has engaged in protected activities; the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. 2002(4), which makes it unlawful to "discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action"; USERRA, 38

35

U.S.C. 4311(b), which provides that an employer may not "discriminate in employment against or take any adverse employment action against any person because such person has engaged in protected activities"; and the OSH Act, 29 U.S.C. 660), which provides that "no person shall discharge or in any manner discriminate" against an employee because the employee has engaged in protected activities.

The Board "believe[d]" and reasoned that Congress' use of the term "intimidate" in addition to reprisal and discriminate in 2 U.S.C. 1317(a) evidences the intent to more broadly define the type of employer conduct proscribed.  The Board further noted that the interference provisions in Section 503(b) of the ADA contain a reference to "intimidation" as well as references to coercion, threats and interference. 42 U.S.C. 12203 (b) and that such interference clauses have generally been construed more broadly than the adverse action cases under Title VII might suggest citing *Brown* v. *City of Tucson*, 336 F.3d 1181, 1191-92 (9th Cir. 2003).

The Board therefore declined to adopt the narrow definition of "employer conduct" under Title VII for 2 U.S.C. 1317(a) retaliation cases and defined "employer conduct" nee "adverse action" as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party or others from engaging in protected activity" .

There is no question that Congress was aware of the analogy between Title VII

and CAA. Congress, by the difference in statutory language, rejected the substantive standards for discrimination and retaliation that prevail in private and public sector Title VII law and based on the practical distinctions between the substantive law of the CAA and Title VII and the practical distinctions between the CAA comprehensive statutory scheme and Title VII's statutory scheme, it is clear that the CAA was not drafted as a mirror image to the comparable legislation governing private and public sector Title VII law.

Accordingly, the CAA, on its face, was neither enacted as a supplement to Title VII nor enacted to supercede the Title VII scheme and the differences in said statutory schemes implicitly recognizes the Congressional intent to adhere to the separation of powers principle.

The case law precedent developed under Title VII was available to Congress when it enacted the CAA and rejected the otherwise qualifying and restrictive language contained in 42 U.S.C. 2000e-2, 42 U.S.C. 2000e-3, and 42 U.S.C. 2000e-16.

In rejecting the qualifying and otherwise restrictive language contained in 42 U.S.C. 2000e-2, 42 U.S.C. 2000e-3, and 42 U.S.C. 2000e-16 Congress rejected the non-statutory case law precedent established by the judiciary for Title VII.

## G. THE EFFECT OF THE UNIFORM REMEDY FOR RETALIATION

37

Moreover, the one uniform remedy for claims of retaliation mandates a statutory construction which includes the "employer conduct" recognized by the substantive law of the workplace law made applicable under the CAA pursuant to which a claim of retaliation is based. An otherwise reading of the text that would effectively render the word "intimidation" insignificant in 2 U.S.C. 1317(a), if not wholly superfluous; and, additionally nullify an entire section of the text and excise a portion of the text in violation of paramount rules of statutory construction, to wit: 2 U.S.C. 1351 and the application of Chapter 71 of Title5 of the United States Code relating to Federal service labor-management relations.

The Court in *Duncan* v. *Walker*, 533 U.S. 167(2001), recognized that "A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."

The Court earlier stated that "[I]t is our duty `to give effect, if possible, to every clause and word of a statue.;" *United States* v. *Menasche*, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615(1955)(quoting *Montclair* v. *Ramsdell*, 107 U.S. 2147, 1521, 2 S.Ct. 391, 27 L.Ed. 431(1883)); see also *Williams* v. *Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389(2000)(describing this rule as a "cardinal principle of statutory construction."

The Court in *Dunn* v. *Commodity Futures Trading Comm'n*, 519 U.S. 465,

38

472, 117 S.Ct. 913, 137 L.Ed.2d 93(1997)(recall[ed] the "doctrine that legislative enactments should not be construed to render their provisions mere surplusage").

The Court in *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1554-55)(1987) noted that a statute must be read as a whole with due regard for its object, purposes and underlying policy.

The Court further noted that limiting language in a statute to terms of a different statute, violates the cardinal principal of statutory construction that Congress does not insert superfluous, void, or insignificant words into its statute. *TRW Inc.* v. *Anderws*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 151(2001) and *United States* v. *Menasche*, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615(11955)("It is our duty `to give effect, if possible to every clause and word of a statute'..."(quoting *Montclair* v. *Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391(1883).

In accordance with this argument, Plaintiff contends that the CAA retaliation statute must, at a minimum hold unlawful the "employer conduct" held to constitute unlawful activity  under the broad breadth of the National Labor Relations Act, "NLRA,"  which prohibits employers from engaging in any conduct, including discharges, which may "otherwise discriminate against an employee" which has been liberally construed to include numerous discriminatory actions that fall short of an actual discharge as will be shown below.  Section 8(a)(3), 29 U.S.C. 158(a)(3)

In *Microimage Display Div. of Xidex Corp.*, 297 N.L.R.B. 110, 111, enforced, 924 F.2d 245 (D.C. Cir. 1991) the National Labor Relations Board, NLRB Board, rejected the  administrative law judge's finding that single-day transfer was *de minimis* and found that, viewed in context of other violations, the single-day transfer was a "substantial violation. In *Edgar L. Landen T/A Speed Mail Serv.*, 251 N.L.R.B. 476, 477 (1980) the NLRB Board rejected the administrative law judge's finding that changing timing of paycheck distribution was *de minimis* and found the action to have violated section 8(a)(3)), 29 U.S.C. 158(a)(3).

The Board found unlawful discrimination when the employer  issued disciplinary warnings in violation of section 8(a)(3):  *Zimmerman Plumbing & Heating Co.*, 325 N.L.R.B. No.5, 1997 WL 728268, at *26, *30 (Nov. 8, 1997); *Vencor Hosp.-L.A.*, 324 N.L.R.B. No. 35, 1997 WL 471299, at *27-30 (Aug. 13, 1997) *Feldkamp Enters., Inc.*, 323 N.L.R.B. No. 206, 1997 WL 394448, at *51-54 (July 11, 1997).  In *Feldkamp Enterprises*, the administrative law judge rejected the employer's argument that the incident was "too trivial," finding "nothing trivial about these warnings or the discriminatory motives propelling them."

In *House Calls, Inc.*, 304 N.L.R.B. 311, 312-13 (1991) and *Advertiser's Mfg. Co.*, 280 N.L.R.B. 1185, 1190-91 (1986), enforced, 823 F.2d 1086 (7th Cir. 1987) the NLRB Board found the employer's removal of telephone privileges to be unlawful

40

discrimination.

In *Goodman Inv. Co.*, 292 N.L.R.B. 340, 340, 349-50 (1989) the NLRB Board found the elimination of an employee's free parking space to be unlawful discrimination.

In *Mid-South Bottling Co.*, 287 N.L.R.B. 1333, 1342-43 (1988), enforced, 876 F.2d 458 (5th Cir. 1989) the NLRB Board found an employer's refusal to allow an employee to borrow a dolly for personal use to be unlawful discrimination.

In *Sands Motel*, 280 N.L.R.B. 132, 141 (1986) the NLRB Board found an employer's elimination of paycheck-cashing privileges to be unlawful discrimination.

In *F & R Meat Co.*, 296 N.L.R.B. 759, 767 (1989) the NLRB Board found an employer's behavior to be unlawful discrimination when he stopped providing free coffee by removal of a coffee pot.

The NLRB Board has determined minor disciplinary and informal counseling to be actionable where an employer has a progressive disciplinary system and "writes up" a warning and places it in the employee's personnel file and the employee will suffer no consequences now, but if he gets additional written warnings within a certain time period, additional penalties may be imposed. Under the NLRA the employee is able to challenge the written warning even if it does not affect any other employment conditions. So long as the discipline is part of a disciplinary system or

41

the discipline has a chance of affecting the employee's compensation or tenure, it is a term, condition, or privilege of employment. See *Zimmerman, Vencor Hospital and Feldkamp Enters, Inc, supra*.

If the action is merely a form of informal counseling, without potential future consequences, it generally will not represent a term, condition or privilege of employment under Section 8(a)(3) of the NLRA.

Oliver Wendell Holmes, Jr. wrote in The Path of the Law, 10 Harv.L.Rev. 457, 459(1897) that "[I]f you want to know the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict....."

Defendant can well predict the line-drawing activity it can unlawfully engage in and avoid accountability under the CAA pursuant to the application in error of the standards of Title VII to said complaints brought pursuant to the CAA and not Title VII.

The court has said that "a statute is not *in pari materia* if its scope and aim are distinct or where a legislative design to depart from the general purpose or policy of previous enactments may be apparent.'" *Latimer* v. *Sears Roebuck & Co.*, 285 F.2d 152, 157 (5th Cir. 1960). See also *Williamson* v. *Lee Optical Co.*, 348 U.S. 483, 489, 99 L. Ed. 563, 75 S. Ct. 461 (1955); *Roschen* v. *Ward*, 279 U.S. 337, 339, 73 L. Ed.

42

722, 49 S. Ct. 336 (1928); *Ramapo Bank* v. *Camp*, 425 F.2d 333, 346 (3d Cir.), cert. denied, 400 U.S. 828, 27 L. Ed. 2d 58, 91 S. Ct. 57 (1970).

"The purpose[s] of Congress is a dominant factor in the determination of a statute's meaning,...and where a choice may be made between two possible constructions, that construction should be chosen which would serve to effectuate Congressional purpose rather than defeat it." *Stella* v. *Graham-Paige Motors Corp.*, 104 F. Supp. 957, 959 (D.N.Y. 1952); *Hudson Distributors* v. *Eli Lilly*, 377 U.S. 386, 391-92, 12 L. Ed. 2d 394, 84 S. Ct. 1273 (1964); *Commissioner* v. *Bilder*, 369 U.S. 499, 503, 8 L. Ed. 2d 65, 82 S. Ct. 881 (1962); *NLRB* v. *Lion Oil Co., supra* note 53, 352 U.S. at 290-92; *United States* v. *City & County of San Francisco, supra* note 53, 310 U.S. at 26; *United States* v. *Guaranty Trust Co.*, 280 U.S. 478, 485, 74 L. Ed. 556, 50 S. Ct. 212 (1930); *Fort Smith & Western R.R. Co.* v. *Mills*, 253 U.S. 206, 208, 64 L. Ed. 862, 40 S. Ct. 526 (1920); *Gibson* v. *Missouri Pac. R.R. Co.*, 441 F.2d 784, 787 (5th Cir.), *cert. denied*, 404 U.S. 855, 30 L. Ed. 2d 96, 92 S. Ct. 102 (1971); *Akins* v. *United States*, 194 Ct. Cl. 477, 439 F.2d 175, 177 (1971).

Plaintiff submits, when all factors are placed on the scale, the balance falls in the favor of the Plaintiff: the CAA is not *in pari materia* with Title VII; the broad CAA standards respecting "employer conduct" are to apply and the respective Counts in the Complaint are viable claims of discrimination, viable claims of

retaliation based on "opposition," and viable claims of retaliation based on "participation in federally protected activities under the CAA," pursuant to 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the Congressional Accountability Act, respectively.

## H. HOSTILE WORK ENVIRONMENT CLAIMS UNDER THE CAA

Defendant's Motion respecting Plaintiff's hostile work environment claims are based on a failure to raise actionable claims pursuant to Title VII law in derogation of the CAA law to be applied in the instant matter . See 2 U.S.C. 1361(f)(1) of the CAA.

The Board with respect to the hostile work environment claim in *Solomon*, *supra*, recognized the role of context and identified "context" as the "totality of circumstances" in addition to reaffirming the standard it had established for claims of retaliation in *Britton*.

The Board respecting the hostile work environment claims in *Solomon* referenced *Raniola* v. *Bratton*, 243 F.3d 610(2nd Cir. 2001), which relying on *Williams* v. *General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999), held that, when considering the totality of the circumstances, "even where individual instances of...harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Raniola* v. *Bratton*,

44

*supra*, 243 F.3d at 6176, citing *Williams* v. *General Motors Corp.*, *supra*, 187 F.3d at 563.

The Board in *Solomon, supra,* noted that the *Raniola* court supported its decision by referring to and relying in part on language from *Andrews* v. *City of Philadelphia,* 895 F.2d 1469(3d Cir. 19909): "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario....What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents." *Raniola*, 243 F.3d at 62, citing *Andrews* v. *City of Philadelphia*, 895 F.2d at 1484.

In *Solomon*, as here, the claim was dismissed on the pleadings.

The Board found that the hearing officer's dismissal of Solomon's claim of hostile work environment was inappropriate and that further analysis was necessary as the hearing officer was not able to determine whether the totality of the circumstances surrounding Solomon's claims would support his allegations of hostile work environment

The Board noted that the Hearing officer found that the individual acts of which Solomon complained were not sufficiently severe and pervasive, but provided

45

no analysis with that determination.

The Board noted that a thorough analysis of the claim, once there has been an opportunity for discovery, and once facts other than those alleged in the complaint can be considered, will determine whether the "cumulative affect of the individual acts" will establish the "frequency of the [retaliatory adverse treatment]; its severity; whether it [wa]s physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [Solomon's] work performance." *National Railroad Passenger Corporation* v. *Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074(2002).

The Court further held in *National Railroad Passenger Corporation* v. *Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074(2002), "*Morgan*" that

> "[H]ostile work environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the `unlawful employment practice,' §2000e-5(e)(1), cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See *Harris* v. *Forklift Systems, Inc.*, 510 U. S. 17, 21. Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.*, at 23. The question whether a court may, for purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, turns on the statutory requirement that a charge be filed within a certain number of days `after the alleged unlawful employment practice occurred." Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice,' it does not matter that

46

some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability. That act need not be the last act. Subsequent events may still be part of the one claim, and a charge may be filed at a later date and still encompass the whole. Therefore, a court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period...."

The Board noted that "[W]hen there is no opportunity to obtain additional evidence, as is the case in Solomon, and the courts rely only on the pleadings, the circuit courts of appeal have evaluated cases under the "notice pleading" theory to determine whether the allegations in a plaintiff's pleading are sufficient to survive a motion to dismiss. See *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992(2009)(employment discrimination pleadings need only give fair notice of the claims and grounds upon which they rest); *Weston* v. *Commonwealth of Pennsylvania*, 251 F.3d 4209(3rd Cir.2001)(claim will survive a motion to dismiss when allegations pled provide adequate notice to defense); *Krieger* v. *Fadley*, 211 F.3d 134 (D.C.Cir.2000)(pleadings need not contain facts to support each element of a claim); *Brokaw* v. *Mercer County*, 235 F.3d 1000(7th Cir. 2000)(notice pleading standards are lenient); *Fouche* v. Jekyll Island-State Park Auth., 713 F.2d 1418(11th Cir. 1983)(notice pleading is sufficient at motion to dismiss stage.)"

The Board further noted that "[I]ndeed, the circuit courts of appeal appear to

47

disfavor the dismissal of hostile work environment claims unless the totality of the circumstances can be considered in evaluation of the allegations and sufficiency of the evidence; that is to say, unless discovery has been completed."

The Board went on to note that "[i]n the context of Solomon's claims, the Board is not ruling on summary judgment issues. It may very well be that the evidence presented will not support the allegations in the complaint, and that the claims may not survive a motion for summary judgment."

The Board found it was "premature at this point, [absent discovery], to determine whether there is sufficient evidence to support the claim."

Plaintiff submits that the adverse treatment she suffered and alleged in the Complaint was actionable pursuant to the retaliation standard established by the Board in *Britton* and repeated in *Solomon.*

Plaintiff submits that the personnel action(s) she suffered and alleged in the Complaint was actionable pursuant to the discrimination standard established by Congress in the statutory language set forth in 2 U.S.C. 1311(a)(1) of the CAA.

Plaintiff submits, consistent with the Board's ruling in *Solomon,* that absent discovery, she has, under the "notice pleading" theory, provided fair notice of the claims and grounds upon which her claims rest.

Plaintiff submits, consistent with the Board's ruling in *Solomon*, the allegations

48

in the complaint were adequately pled, and dismissing the complaint on said alternative Motion for Summary Judgment, absent discovery and a determination of the "totality of the circumstances" is inappropriate at this juncture.

Plaintiff submits, based on her foregoing arguments, that the "employer conduct" alleged, made actionable under the CAA and considered in the aggregate, supports the hostile work environment claims set forth in the Complaint, whether based on discrimination or retaliation and that said respective claims are timely pursuant to the notification and federal discovery rule.

## CONCLUSION

Appellant submits, viewing the evidence in the light most favorable to the appellant and based on the broader parameters of the respective statutory language of 2 U.S.C. 1317(a)of the CAA and the Board decisions respecting the CAA standard for claims of retaliation and the totality of circumstances CAA standard for retaliatory hostile work environment claims under the CAA, a reasonable jury could find the allegations set forth in Counts I-VI of the Complaint to be materially adverse.

Notably, the Court, with respect to Title VII, has said that "[W]hether a particular adverse action satisfies the materiality threshold is generally a jury question, with our role limited to determining whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find the action materially

49

adverse." See *Pardo–Kronemann* v. *Donovan*, 601 F.3d 599, 607 (D.C.Cir.2010) (explaining, in the context of claim that reassignment of duties was materially adverse, that "whether a particular reassignment of duties constitutes an adverse action is generally a jury question.)

The Court has further noted with respect to Title VII, that a reasonable jury could conclude that the ominous prospects set forth in the respective Counts are more than sufficient to deter a reasonable employee from filing a discrimination complaint. See *Porter* v. *Shah*, 606 F.3d 809, 818 (D.C.Cir.2010) (holding that a supervisor's issuance of a negative written interim assessment and performance improvement plan constituted materially adverse action because, under applicable agency regulations, the negative rating assessment and accompanying plan " could expose [the plaintiff] to removal, reduction in grade, withholding of within grade increase or reassignment" (emphasis added) (internal quotation marks omitted), because a reasonable jury could find said negative rating could dissuade a reasonable employee from making or supporting a charge of retaliation

Moreover, with respect to Title VII, the Court has further noted that "[W]hether an action is 'materially adverse' is determined by whether it holds a deterrent prospect of harm, and not by whether the harm comes to pass or whether any effects are felt in the present." See *Rattigan* v. *Holder*, 604 F.Supp.2d 33, 52( D.C.D.C.

50

2011).

WHEREFORE, appellant respectfully requests a reversal of the decision of the District Court, and the matter be remanded to the District Court for further proceedings consistent with this decision.

Respectfully submitted,

/s/
Jeffrey H. Leib
Attorney for Petitioner
5104 34th Street, N.W.
Washington, D. C. 20008
202 362 - 0682

November 6, 2013

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing Brief for Petitioner contains 11,733 words, including footnotes and citations, and excluding the cover, the certificate required by Circuit Rule 28(a)(1), the table of contents, the table of authorities, the glossary, the certificate of service, and any addenda. Counsel has relied on the word count reported by counsel's word processing system for the relevant sections of the brief. This brief is proportionally spaced in 14 point Times Roman font.

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November, a copy of the foregoing Brief of Appellant Margaret D. Newton was served on Defendant via ECF.

/s/
Jeffrey H. Leib

51